An Tai LEE a/k/a Andy Lee, Appellant,

v.

Viki Chen LEE, Appellee.

No. 01–96–00478–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 12, 1998.

Margaret Maxwell McClure, Houston, for Appellant.

David Kent Mestemaker, Houston, for Appellee.

Before Justices MIRABAL, ANDELL, and TAFT.

## OPINION

TIM TAFT, Justice.

An–Tai Lee (Andy), appeals from a judgment in a bench trial which (1) established the existence of a common law marriage between Andy and Viki Chen Lee (Viki) prior to the parties' ceremonial marriage, (2) granted the parties a divorce, and (3) distributed the parties' marital assets. We address the sufficiency of the evidence supporting the finding of fact that the parties held themselves out to be common law husband and wife. We reverse.

### Factual and Procedural Background

Viki moved to Houston from Taiwan in 1973, and has been a United States citizen for 18 years. Andy, an undocumented alien, came to the United States from Taiwan in 1984. Upon his arrival in the United States, Andy worked as a construction contractor in Los Angeles, California. In 1987, Andy moved to Houston where he continued his line of work. Prior to meeting Andy, Viki owned a business named Daddy's Doughnuts, which she sold in 1992.

The parties met in January 1992 when Viki hired Andy to fix the roof on her house.

Andy moved into Viki's home in March 1992. At that time, Andy was the owner and operator of Sing Chun Services, a company specializing in home repair. After moving in with Viki, Andy continued to run his business out of her home and used her telephone number in the company's advertisements. Because Andy could not open a checking account without a driver's licence or social security number, he deposited checks made out to his business into Viki's checking account. At trial, Andy testified that Viki assisted him by keeping the books for his business, a fact which Viki denied. The testimony was conflicting concerning the details of their living arrangement. Andy testified that he slept in the garage, but both Andy and Viki testified that they "slept together" during the time they lived in Viki's home.

Soon after Andy and Viki moved in together, Viki began referring to Andy as her husband. In 1992, Viki told Li Hwa Kuo and Goretti Ting, her friends, that she was married. Sheree Huang, Viki's sister, met Andy in 1992 after he began living with Viki, and Viki told her that Andy was her husband. Viki testified that her customers and friends began calling her Mrs. Lee in 1992.

Viki testified that in 1992, she and Andy agreed that each would bring their separately owned properties "into the marriage." According to Viki, Andy or his family owned certain property in Taiwan, which he agreed to have transferred to them jointly. Viki agreed to transfer to Andy the title to several lots in Montgomery County and a townhome in Harris County. For reasons not clear in the record, Viki transferred title to the Montgomery County lots from herself to her sister Sheree in 1989, even though Viki continued to pay the taxes and mortgages on the properties until 1992. In 1992, Viki asked her sister to transfer those lots to Andy. The warranty deeds admitted into evidence at trial showed that the Montgomery County lots and the Harris County townhome were transferred from Sheree to Andy on May 10, 1992. When Sheree asked why Viki was requesting the transfer, Viki stated that she now had a husband. Viki testified that the Taiwanese property owned by Andy

or his family was never conveyed into the marriage, although she sent $500 to Andy's father in Taiwan to cover the costs of having title to those properties transferred to Viki and Andy. Andy denied that such an agreement existed, and testified that he paid Viki $5,000 for the Harris and Montgomery County properties. However, Andy admitted that he had no documentation to show that he had paid for the properties.

In his answers to Viki's requests for admissions, which were read into evidence at trial, Andy stated that he "met and married Viki Chen on October 19, 1990," and that "[Viki] wrote to my family in Taiwan. Through letter announced we met in 1991 and married." On cross-examination, Andy clarified that his response should have reflected that he met Viki in 1992, not in 1990 or 1991.

On September 24, 1993, Viki filled out a passport application for Andy, and went with Andy to turn it in. Although Andy denied that the document, written in Taiwanese, reflected that Viki was his wife, he stated that he asked her to fill out the form and to accompany him to the immigration office because it was better to have someone with you when applying for a passport.

Andy and Viki were ceremonially married on December 27, 1993. Viki filed for divorce on April 22, 1994, alleging that she and Andy had been ceremonially married on December 27, 1993, and had ceased living together as husband and wife on or about January 1994. Viki's petition alleged that the marriage had become insupportable because of discord and conflict of personalities and she accused Andy of cruel treatment toward her. Viki requested the court to order a just and right division of the marital estate. Andy filed a cross-petition for divorce on June 8, 1994.

Trial commenced on October 30, 1995, during which the court granted Viki's trial amendment to conform the pleadings to testimony adduced at trial supporting (1) that an informal marriage existed beginning in early 1992, and (2) that Andy physically and mentally abused Viki. The trial court signed the final decree of divorce on December 14, 1995.

Andy filed a motion for new trial, which the trial court denied.

### Findings of Fact and Conclusions of Law

In six points of error, Andy challenges the sufficiency of the evidence supporting certain findings of fact and conclusions of law made by the trial court. In pertinent part, those findings and conclusions are as follows: [1]

#### FINDINGS OF FACT

1. The parties resided together in Harris County, Texas for more than one year prior to the filing of the divorce petition.

2. The parties agreed to be married and lived together as husband and wife beginning in January, 1992, in Texas after they agreed to be married.

3. No children were born during the marriage of the parties and none are expected.

4. The parties represented to others that they were married.

5. The parties agreed to be married.

. . . .

12. Respondent was abusive towards Petitioner.

#### CONCLUSIONS OF LAW

. . . .

4. The partition of the estate and debts of the parties is just, right and equitable, and in accordance with § 3.63 of the Texas Family Code.

5. The parties were informally married in January, 1992, in accordance with § 1.91(a)(2) of the Texas Family Code.

### Standard of Review

In an appeal from a bench trial, findings of fact have the same weight as a jury's verdict upon special issues. *IFG Leasing Co. v. Ellis,* 748 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1988, no writ). Such findings are reviewable for legal and factual sufficiency of the evidence by the same standards applicable in reviewing the

1. The omitted findings specified the property, community and separate, awarded to each party.

sufficiency of the evidence supporting a jury's finding. *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 529 (Tex.App.—Houston [1st Dist.] 1994, no writ). Unless the trial court's findings are challenged by a point of error on appeal, they are binding upon the appellate court. *Carter v. Carter*, 736 S.W.2d 775, 777 (Tex.App.—Houston [14th Dist.] 1987, no writ). An erroneous finding of fact or conclusion of law does not require a judgment to be reversed if the judgment is otherwise correct on the merits. *Vandever v. Goettee*, 678 S.W.2d 630, 635 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ In considering a legal sufficiency or no evidence point of error, we view the evidence in the light most favorable to the trial court's finding, considering only the evidence and inferences that support the finding and rejecting all other evidence and inferences. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is more than a scintilla of evidence supporting the finding, an appellate court must overrule the legal sufficiency point of error. *Hatteberg*, 933 S.W.2d at 530. In reviewing a factual sufficiency of the evidence challenge, this Court must evaluate all the evidence and reverse the judgment only if the finding of the trial court is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). A trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Jerry v. Kentucky Cent. Ins. Co.*, 836 S.W.2d 812, 814 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The trial court may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

### Common Law Marriage

■ The three elements of a common law marriage are: (1) agreement to be married; (2) after the agreement, living together in Texas as husband and wife; and (3) repre-senting to others in Texas that they were married. Act of May 31, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex. Gen. Laws 2707, 2717 (amended 1997) (current version at TEX. FAM.CODE ANN. § 2.401(a)(2) (Vernon Supp. 1998)). A proponent may prove an agreement to be married by circumstantial, as well as direct, evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex.1993). Proof of cohabitation and representations to others may constitute circumstantial evidence of an agreement to be married. *Id.*

### A. Living Together as Husband and Wife

■ In his second point of error, Andy contends that Viki did not prove they represented to others in Texas that they were husband and wife. The statutory requirement of "represented to others" is synonymous with the judicial requirement of "holding out to the public." *Winfield v. Renfro*, 821 S.W.2d 640, 648 (Tex.App.—Houston [1st Dist.] 1991, writ denied). It is well settled that "holding out" may be established by conduct and actions of the parties. *Id.* Spoken words are not necessary to establish representation as husband and wife. *Id.* In *In re Estate of Giessel*, this Court found the evidence was sufficient to establish that the cohabiting couple "held out" or represented to others that they were husband and wife because the couple referred to each other as "husband" and "wife," and opinion and reputation testimony indicated that the couple's conduct was viewed as a representation that they were married. 734 S.W.2d 27, 31 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

Andy contends the evidence is legally insufficient to establish they held themselves out to be husband and wife in Texas. Marriage is more than a contract; it is a status. The living together as man and wife and the public and open holding out that the two are man and wife are as essential to a valid common law marriage as the agreement itself. *See Walter v. Walter*, 433 S.W.2d 183, 191 (Tex.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.). Without these elements, there is no common law marriage. *See id.*

■ The only evidence of a holding out is Viki's testimony that in 1992, she told her

friends, Li Hwa Kuo and Goretti Ting, that she was married, and that her customers and friends began calling her Mrs. Lee. In *Ex parte Threet*, cited by appellant, the court held that isolated references, without more, were no evidence of a holding out. 160 Tex. 482, 333 S.W.2d 361, 364–65 (Tex.1960). Here, like in *Ex parte Threet*, only a few people knew about the marriage. If secret, it was not a common-law marriage. *Id.* In *In re Estate of Giessel*, this Court held that a marriage that was secret from only a few members of the couple's family was a common-law marriage because the marriage was widely known in the community. 734 S.W.2d at 31–32. Here, unlike in *In re Estate of Giessel*, Andy and Viki did not have the reputation in the community for being married. It is our opinion that the facts set out above do not constitute evidence that Andy and Viki held out to the public that they were man and wife. The only other evidence that Viki can find to support her position on representations to others is Andy's responses to Viki's requests for admissions, which were read into the record at trial. Andy stated that he "met and married Viki Chen on October 19, 1990," and that "Viki wrote to my family in Taiwan. Through letter announced we met in 1991 and married." On cross-examination, Andy admitted that his responses should have reflected that he met Viki in 1992, not in 1990 or 1991. An incorrect date recited on a letter and corrected by Andy on cross-examination is not enough to establish the element of holding out as married.

The evidence offered to support the holding out element was holding out by Viki only, not by Andy. Only Viki did anything, and she did not do much, that could be interpreted as holding Andy and Viki out as married before December 27, 1993. The introduction of Andy as her husband to two close friends, and telling a few customers and friends that she was married to Andy, constituted no evidence that Viki *and* Andy were holding themselves out to the public as man and wife.

On the issue of holding out in Texas, we find there is no more than a scintilla of evidence to support the trial court's finding. Thus, we sustain the legal sufficiency chal-

lenge to the trial court's finding that the parties represented to others that they were married. Accordingly, we sustain Andy's second point of error.

Because we have found that Viki failed to prove that they held themselves out to be husband and wife in Texas, we need not address the other elements necessary to establish a common-law marriage. Until the three elements co-exist, there is no common-law marriage. *Bolash v. Heid,* 733 S.W.2d 698, 699 (Tex.App.—San Antonio 1987, no writ). Because a common-law marriage has not been established we need not address appellant's other points of error.

### Conclusion

We reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

MIRABAL, Justice, dissenting.

This is a dispute over one townhome in Harris County, and seven lots in Montgomery County. Title to all of the property was once held by appellant, Viki Chen Lee (Viki). According to Viki, after she and appellee An Tai Lee (Andy) were common-law married, she had title to the seven lots and townhome transferred into the name of her husband Andy, apparently in accordance with Taiwanese custom. There is evidence that Andy paid no consideration for the real estate. Thereafter, the parties were ceremonially married.

In the subsequent divorce proceeding, Andy took the position that the townhome and seven lots were his separate property, having been acquired by him prior to the ceremonial marriage, and therefore they were not subject to division in the divorce proceeding. After a bench trial, the trial court found the parties had been common-law married prior to Andy's acquisition of title to the seven lots and townhome, and therefore that the real estate was community property to be divided in the divorce proceeding. Based on a finding that Andy had been abusive toward Viki, the trial court awarded Viki full title to the seven lots and townhome.

The main issue in this case is whether the evidence supports the trial court's finding that the parties were common-law married prior to the time title to the townhome and seven lots was transferred into Andy's name. The majority holds that the evidence is legally insufficient to show the existence of a common-law marriage, and therefore that the seven lots and the townhome are the separate property of Andy, because he acquired title prior to the ceremonial marriage. The majority ignores a substantial amount of relevant evidence in reaching its conclusion. Accordingly, I dissent.

The following evidence supports the trial court's finding that the parties were common-law married prior to the May 1992 transfer of title of the real estate into Andy's name: [1]

### Agreement to be married, and living together as husband and wife in Texas after agreement.

The parties met in January 1992. At that time, Andy lived in an abandoned house. Andy moved in with Viki in March 1992. They both testified that they slept together beginning in March 1992. Andy ran his business out of Viki's house and used her telephone number in his advertisements. The checks Andy received from his customers were deposited into Viki's checking account. Andy testified that Viki was responsible for the accounting for the business. Viki sent money to Andy's parents in Taiwan. When asked in 1992 about the living arrangement she had with Andy, Viki would respond, "I married." She testified that they had agreed to be married, and they were married. In his responses to requests for admissions, which he confirmed during his testimony, Andy made the following statements:

— I met and married Viki Chen on October 19, 1990.

— She wrote to my family in Taiwan. Through letter announced we met in 1991 and married.

— Just like, usually, family's husband responsible to earn money, wife responsi-

ble for accounting and housing since October 1990.

On cross-examination, Andy admitted his responses should have reflected that he met Viki in 1992, not in 1990 or 1991.

Viki testified that she and Andy agreed that each would bring their separately owned property "into the marriage." Andy agreed to transfer certain property in Taiwan to the couple, and Viki had title to the townhome and seven lots transferred to Andy, in accordance with their agreement. At the time of the transfer, Viki told her sister she was doing that "because she got a husband now."

The evidence is legally sufficient to support the trial court's findings that the parties (1) agreed to be married, and (2) lived together as husband and wife in Texas prior to May 10, 1992, the date the townhome and seven lots were transferred into Andy's name. The majority opinion does not contest this. Rather, the majority holds that the evidence is legally insufficient to support the trial court's finding regarding the third element needed to establish a common law marriage.

### In Texas represented to others that they were married.

The following evidence supports the trial court's finding that Viki and Andy, while living in Texas, represented to others that they were married:

Viki testified that in 1992 she told her friends she was married, and customers and friends called her "Mrs. Lee." Viki's sister testified that Viki told her around May 1992 that "she got a husband now," and that was the reason Viki wanted to transfer title to the townhome and seven lots into Andy's name. Mrs. Kuo and Mrs. Ting, both long-time friends of Viki in the Houston area, testified that in 1992 Viki told them she was married; Mrs. Ting specifically said Viki told her in the early part of 1992.

Andy admitted that he was an illegal alien and he did not have a social security number or a passport. Viki, although born in Taiwan, has been a United States citizen since 1977. A reasonable inference from the evi-

---

1. We note that a Taiwanese language interpreter was utilized during the trial.

dence is that Andy applied for a passport in September 1993, and as part of the process he represented that Viki was his wife. Viki testified that the reason they were ceremonially married in December 1993, was that Andy wanted to make a trip to Taiwan, and in order to be admitted back into the United States he needed to prove, by a marriage certificate, that he was married to a United States citizen.

Starting in early 1992, Viki wrote all the checks for all the bills of Andy's company, Sing Chun Services, which was operated out of Viki's house where the couple lived. Andy testified that this was normal, that it was customary for the wife of the family to be responsible for accounting and housing, apparently in accordance with Taiwanese tradition. The advertisements for the business, written in Chinese or Taiwanese, listed the home phone number.

Andy also testified that a letter was written by Viki and sent from Houston to Andy's family in Taiwan announcing that Andy and Viki met in 1992 and were married. In December 1992, Viki sent a $500 money order to Andy's parents in Taiwan to pay for the transfer of title of Taiwan property into Andy's name so he could transfer it into the marriage, as he had agreed to do. A reasonable inference from the evidence is that Andy was aware of, and joined in, the representations to his parents, starting in early 1992, that he and Viki were married.

The statutory requirement of "represented to others" is synonymous with the judicial requirement of "holding out to the public." *Winfield v. Renfro*, 821 S.W.2d 640, 648 (Tex. App.—Houston [1st Dist.] 1991, writ denied). It is well settled that "holding out" may be established by conduct and actions of the parties; spoken words are not necessary to establish representation as husband and wife. *Id.* The record contains substantially more than a scintilla of evidence to support the finding that both Andy and Viki represented to others, by words and actions, that they were married prior to May 1992.

Accordingly, appellant's attacks on the legal sufficiency of the evidence should be overruled, and we should address the remaining points of error in this appeal.