Affirmed and Opinion filed August 29, 2002









Affirmed and Opinion filed August 29, 2002.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00229-CV

____________

 

JOSEPH H. MILLS AND RACHEL HUMPHRIES, INDIVIDUALLY AND AS HEIRS
OF THE ESTATE OF GEORGIA ANN MILLS,
Appellants

 

V.

 

HENRY H. MEST (DECEASED), THE ESTATE OF HENRY H. MEST, H.
RICHARD MEST, CHRISTINE ELIZABETH MEST, BRIAN RICHARD MEST, WILLIAM ASHLEY
TREE, HENRY H. MEST, INC., MESTCO DISTRIBUTION, INC. AND MESTCO PLUMBING DISTRIBUTION,
INC., Appellees

 



 

On
Appeal from the Probate Court

Galveston County, Texas

Trial
Court Cause No. 61,426-A

 



 

O
P I N I O N








In
May of 1986, Henry Mest (age 74) and Ann Mills (a few years younger) began
living together.  They were ceremonially
married in 1995.  Ann died in 1997; Henry
died three months later, leaving an estate worth several million dollars.  In the ensuing probate proceedings, Ann=s
children (appellants Joseph H. Mills and Rachel Humphries) alleged a common-law
marriage dating back to 1986, while Henry=s son and grandchildren (appellees Richard Mest, Christine
Mest, and Brian Mest) dated the marriage (and thus the inception of community
property) from the ceremony in 1995.  The
jury found a common-law marriage beginning in 1986.  The trial court granted judgment
notwithstanding the verdict, which forms the basis of appellants=
single issue in this appeal.

In
Texas, common-law marriage requires proof of (1) an agreement to be married,
followed by (2) cohabitation and (3) representations to others.  Tex. Fam.
Code ' 2.401(a)(2).  The
parties here agree cohabitation was present from 1986, but disagree when the
other two began.  The trial court=s
judgment notwithstanding the verdict is correct only if there was no evidence
of one of them.  Brown v. Bank of
Galveston, Nat=l Ass=n, 963 S.W.2d
511, 513 (Tex. 1998).  We review only the
evidence supporting the jury=s verdict and disregard all evidence and inferences to the
contrary. Id.[1]









There
was no direct proof of either of the two disputed elements in this case.  No testimony or documents evidenced an
agreement to be married before the ceremonial marriage took place in 1995.  Nor was there any direct evidence of earlier
representations to the community B apparently Henry never introduced Ann as his wife, and only
one witness recalled Ann introducing Henry as her husband (in 1992, six years
after the jury found the marriage began). 
This is not enough.  See Ex
parte Threet, 160 Tex. 482, 333 S.W.2d 361, 364 (1960) (holding that two
references to claimant as spouse were insufficient); Winfield v. Renfro,
821 S.W.2d 640, 651 (Tex. App.CHouston [1st Dist.] 1991, writ denied) (same);  see also Lee v. Lee, 981 S.W.2d 903,
907
(Tex. App.CHouston [1st Dist.] 1998, no pet.) (requiring representations
to public by both parties to establish common-law marriage).

Instead,
appellants rely on circumstantial evidence, pointing out that several friends
and neighbors testified they considered the two to be married because they
lived together and held hands, showed affection, and Adid
everything together.@  Appellants also point
to testimony that Henry and Ann took care of each other during sicknesses. 

It
is true an agreement to be married may be established by circumstantial
evidence.  Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993).  But stating
the level of circumstantial evidence required is more difficult.  In Russell, the supreme court
considered the legislature=s repeal in 1989 of a provision allowing agreement to be
inferred from cohabitation and representations.[2]  The court held that the repeal did not bar
use of circumstantial evidence, but did require such evidence to be Amore
convincing@ than before: 

If evidence of an express agreement to marry is not offered,
the fact finder will have to treat the facts of cohabitation and holding‑out
as circumstantial evidence of the agreement in order to find a tacit agreement
to be married.  This process is, however,
virtually identical to the prior process of inference.  But by repealing the provision authorizing
the fact‑finder to infer an agreement from proof of two elements of an
informal marriage, the legislature has not excluded a finding of a tacit
agreement to be married.  In making such
a finding, however, it seems that the evidence of holding‑out must be
more convincing than before the 1989 agreement. 


Id. at 932.  In dissent,
Justice Gonzalez argued that without any further guidance, the courts of
appeals were relegated to a Ablind guess@ about what level of proof was required.  Id. at 937 (Gonzalez, J., dissenting).








We
believe that level of proof has not been met in this case.  The equal inference rule prohibits a jury
from inferring an ultimate fact from meager circumstantial evidence that could
give rise to any number of inferences, none more probable than another.  Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex.
2001); Wal‑Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 938
(Tex. 1998) (holding evidence of dirt in macaroni salad was no evidence it had
been on floor long enough to charge store with knowledge).  In this case, the affection and companionship
observed by neighbors was just as consistent (indeed, cynics might say more)
with courtship leading up to ceremonial marriage as it was with a common-law
marriage or a close non-marriage relationship. 
The witnesses= testimony that Henry and Ann Aseemed like@ a married couple is indistinguishable from customers=
testimony that macaroni salad Aseemed like it had been there awhile,@
a conclusion the supreme court held was Amere speculative, subjective opinion of no evidentiary value.@  Wal-Mart, 968 S.W.2d at 937B38.

Similarly,
the circumstantial evidence appellants allege shows representation (or Aholding
out@)
is just as consistent with other relationships. 
Representations may be shown by conduct rather than spoken words.  See Lee, 981 S.W.2d at 906.  But inherent in the concept is behavior
intended as a communication to third parties, not just intimate behavior in
general.  Compare id. at 907 (finding
no evidence of common-law marriage when spouse kept it secret, even though her
customers and friends began treating her as married) with Winfield, 821
S.W.2d at 649 (holding hotel registration and mailbox listing was some evidence
of representation to public).  We believe
the Russell court=s requirement of Amore convincing@ circumstantial proof calls for something more than was shown
in this case.  See Russell, 865
S.W.2d at 932.

We hold the
evidence of a common-law marriage was legally insufficient, and thus the trial
court did not err in setting aside the jury=s verdict.  Appellants=
point of error is overruled, and the judgment is affirmed. 

 

/s/        Scott
Brister

Chief Justice








 

Judgment rendered and Opinion filed August
29, 2002.

Panel consists of Chief Justice Brister
and Justices Anderson and Frost.

Publish C Tex. R. App. P.
47.3(b). 











[1]  There
was considerable evidence contrary to the jury=s
verdict.  Both Henry and Ann listed
themselves as single in all income tax returns and records they filed (even
after their ceremonial marriage).  During
several of Henry=s
hospitalizations, both listed Ann as a friend rather than spouse.  In a 1988 will, Henry appointed his son
Richard and his Afriend@
Ann as executors.  

 

But if the trial court believed such evidence greatly
outweighed proof of a marriage from 1986, the proper remedy was a new trial. See
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 413 (Tex. 1998)
(Gonzalez, J., concurring) (stating that if only viable issue was factual
insufficiency, new trial rather than judgment notwithstanding the verdict was
appropriate). On appeal, Henry=s
heirs could request the same remedy only by filing a cross-appeal, which they
failed to do.  See Tex. R. App. P. 38.2(b). 





[2]  Prior to the
1989 amendment, section 1.91 of the Texas Family Code provided that A(b) . . . [T]he agreement of the parties to marry may
be inferred if it is proved that they lived together as husband and wife and
represented to others that they were married.@  Act of May 31, 1969, 61st Leg., R.S., ch.
888, ' 1, 1969 Tex. Gen. Laws 2707, 2717, amended by Act
of May 29, 1989, 71st Leg., R.S., ch. 369, ' 9, 1989
Tex. Gen. Laws 1458, 1461. Following the 1989 amendment, section 1.91 provided
that A(a) the marriage . . . may be proved by evidence that:
. . . (2) the man and woman agreed to be married and after the agreement they
lived together in this state as husband and wife and there represented to
others that they were married.@ Id.