# NO. 12-18-00001-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LUKE EYRE AND NATHAN NEARMAN, APPELLANTS* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *EASTAR INVESTMENTS, INC., APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Luke Eyre and Nathan Nearman appeal from a post-answer default judgment rendered against them in a suit brought by Eastar Investments, Inc. for damages arising out of a business dispute. The five issues on appeal concern the trial court's jurisdiction, the sufficiency of the evidence, the exclusion of evidence, and the trial court's denial of the motion for new trial. We affirm.

## BACKGROUND

Eastar Investments, Inc. provided seed money of $1.2 million for production of a movie pursuant to a financing agreement between Eastar and Synergy Holding Solutions. Synergy was to use the seed money, referred to in the agreement as the Asset, to provide financing of between twelve million dollars and twenty million dollars in "equity based loan funding." A New Jersey attorney, Michael C. Mone, was to act as escrow agent by holding the $1.2 million in his firm's trust account for the benefit of Eastar. The agreement provided that the Asset "will be in the full ownership, control and discretion of SYNERGY to use, leverage, and otherwise control as needed to fulfill this agreement." It further provided that "[u]pon the delivery of the second installment by SYNERGY of the FINANCING, as set forth herein, SYNERGY shall return the ASSET to

1

EASTAR . . . ." The agreement was to be effective for six months beginning June 30, 2016. Luke B. Eyre is named as "trustee" for Synergy. Eastar transferred $1.2 million based on this agreement.

Pursuant to a July 14, 2016 "Co-Production Agreement," Nathan Nearman, on behalf of Deify Studios, Inc., a subsidiary of Synergy Holding Solutions, agreed to finance the movie "to equal the current budget amount of $20,649,723.00 . . . ." As part of the arrangement, Nearman was "to do a rewrite of the script" and receive a cowriter credit on screen, Deify would have sole approval and authorization for hiring the crew, cast, and vendors, Eyre and Nearman were to be credited as executive producers, and Nearman was to be cast in the speaking role of the sheriff, a role that, under the terms of their agreement, was to be featured and included in the final cut of the film.

The financing never materialized and there was some question as to the location of the $1.2 million. There were many discussions about when Synergy would repay Eastar in full. Synergy made two payments totaling $240,000. The parties entered settlement negotiations, and agreed to a settlement, but Synergy failed to return the seed money.

On November 3, 2016, Eastar sued three Synergy entities,[1] Deify, Free Movie Project, LLC, FMP Productions LLC,[2] KJM Capital Group, LLC,[3] Luke Eyre, Nathan Nearman, and Michael C. Mone. Eastar alleged fraud, theft, conversion, breach of fiduciary duty, negligence, and conspiracy. The Synergy entities, Deify, Eyre, Nearman, and Mone filed answers. KJM filed a special appearance which it later withdrew. The record does not include an answer filed by KJM. Free Movie Project and FMP Productions answered and filed a cross-claim against the Synergy entities, Deify, Eyre, Nearman, and Mone for fraud and tortious interference with a contract and with prospective business relations.

A bench trial was held on September 18, 2017. None of the defendants appeared at trial. After hearing testimony, the trial court rendered judgment in favor of Eastar against the Synergy entities, Deify, KJM, Eyre, Nearman, and Mone for $1,750,000 in actual damages and $1,750,000

[1] Those three entities are Synergy Holding Solutions Trust, Synergy Holding Solutions PR, LLC, and Synergy Holding Solutions PR, Inc.

[2] Free Movie Project, LLC is a Texas company that owns the rights to the screenplay of the movie at issue. FMP Productions, LLC is a Georgia company formed because the movie was to be filmed in Georgia.

[3] KJM Capital Group, LLC is a private equity lender based in Utah that was purportedly going to loan $60 million to Synergy.

2

in exemplary damages. The court also rendered judgment for Free Movie Project and FMP Productions, ordering the Synergy entities, Deify, KJM, Eyre, Nearman, and Mone to pay actual damages of $12,000,000 and exemplary damages of $12,000,000. The court further ordered that Eastar take nothing on its claim against Free Movie Project and FMP Production.

A notice of appeal was filed by the Synergy entities, Deify, Eyre, and Nearman. On May 8, 2018, this court dismissed the appeal as to the Synergy entities and Deify for want of prosecution.[4] Nearman, acting pro se, filed a brief on behalf of himself and Eyre. Only Nearman signed the brief. Because Nearman is not licensed to practice law, he cannot represent Eyre. *See* TEX. GOV'T CODE ANN. § 81.102 (West 2013).

After notification by this court, Eyre filed a late motion to extend time to file a brief. The motion did not comply with the rules of appellate procedure, and this court notified him regarding his need to correct the errors. Without filing a corrected motion to extend time to file the brief, Eyre presented Nearman's brief to which Eyre added his signature. Neither the lengthy statement of facts, written in Nearman's first person account, nor the issues and arguments, have been altered. The certificate of service certifies that a copy of the brief was delivered to the other parties six months before Eyre attempted to file it. We decline to consider this brief due to Eyre's failure to comply with the rules of appellate procedure. *See* TEX. R. APP. P. 38.8(a)(3).

## JURISDICTION

In his first issue, Nearman asserts that the trial court did not have jurisdiction over Deify or Nearman. He argues they have no valid contract with a Texas resident, did not perform a tort in the state, and never recruited Texas residents for employment. In his second issue as argued in the body of the brief,[5] Nearman contends the trial court erred in exercising jurisdiction over Synergy and Eyre based on a forum selection clause in the financial agreement.

---

[4] *Synergy Holding Sols. Trust v. Eastar Invs., Inc.*, No. 12-18-00001-CV, 2018 WL 2112237 (Tex. App.–Tyler May 8, 2018, no pet.) (per curiam) (mem. op.).

[5] At the beginning of his brief, Nearman lists his issues presented. This list does not entirely coincide with arguments in the brief. In his list of issues presented, Nearman's second issue asks if there is error on the face of the record considering Nearman and Eyre were not present at the hearing. We address this question in the discussion of the motion for new trial.

3

Deify and Synergy have previously been dismissed from this appeal. *See Synergy Holding Sols. Trust*, 2018 WL 2112237, at \*1. Additionally, Nearman, who is not an attorney, cannot represent, or argue on behalf of, Deify, Synergy, or Eyre. *See* TEX. GOV'T CODE ANN. § 81.102. Finally, Nearman filed an answer in this cause, thereby waiving the right to contest the trial court's personal jurisdiction over him. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006) (Brister, J., concurring). We overrule Nearman's first and second issues.

## EXCLUSION OF EVIDENCE

In his third issue, in his list of issues, Nearman asks if there is sufficient evidence to support the trial court's judgment. In the body of his brief, under issue three, he contends the trial court erred by excluding evidence of fraud and misrepresentations by Eastar and others associated with the movie project. He refers to "critical evidence including that presented in Declarations, Motion[s], and responses . . . intended to induce Eyre and Nearman to enter agreements, pay of[f] old debts, and dupe innocent persons out of money." Nearman further argues that the trial court should have concluded that all agreements were void due to this fraud. After his argument, he includes a list of cases with no explanation as to why he believes they are pertinent to this issue.

Nearman does not specify the evidence he deems erroneously excluded. *See Canadian Mill & Elevator Co. v. King*, 79 S.W.2d 876, 877 (Tex. Civ. App.−Texarkana 1935, no writ) (held that particular evidence claimed to have been improperly admitted must be identified and it is insufficient to describe it as evidence of a particular character or relating to a particular matter). Furthermore, Nearman, who was not present at the trial, did not offer evidence or object to the exclusion of evidence. Error regarding the admission of evidence is preserved by making a timely, specific objection, and obtaining a ruling, which Nearman did not do here. TEX. R. APP. P. 33.1(a).

Although unclear, it appears that Nearman contends the evidence is insufficient to support the trial court's judgment because Eastar, Free Movie Project, and FMP Production made fraudulent misrepresentations to the Synergy entities which voided their agreement. As a general rule, an affirmative defense is waived if a defendant does not specifically plead it. TEX. R. CIV. P. 94; *RR Maloan Invs., Inc. v. New HGE, Inc.*, 428 S.W.3d 355, 362 (Tex. App.−Houston [14th Dist.] 2014, no pet.). Nearman filed only a general denial. Furthermore, Nearman never attacks the trial court's findings that the Synergy defendants failed to return Eastar's money, never intended to return it, unlawfully appropriated it, and used deception to induce the deposit, intending

4

to deprive Eastar of the money. Unless the trial court's findings are challenged on appeal, they are binding upon the appellate court. **Lee v. Lee**, 981 S.W.2d 903, 906 (Tex. App.−Houston [1st Dist.] 1998, pet. denied). Likewise, Nearman did not contest the trial court's conclusions of law that the Synergy defendants committed fraud and conversion, violated the Texas Theft Liability Act, and tortiously interfered with Free Movie Project and FMP Production's business relations. *See* **Burtch v. Burtch**, 972 S.W.2d 882, 888 (Tex. App.−Austin 1998, no pet.) (held that a trial court's conclusions of law are reviewable only when attacked as erroneous as a matter of law).

In his conclusion under his third issue, Nearman asserts that "the trial court judge should not have ruled in favor of nor rewarded such misconduct, unethical behavior, and fraud by imposing astronomical and unreasonable damage amounts in the Default Judgment." It is unclear whether Nearman intends by this statement to attack the damage awards or if he merely concludes that, after application of his affirmative defense, Eastar should not be awarded damages. Nearman failed to include any discussion of the damage awards. In such an attack, the brief should include a discussion containing clear and concise argument that the awards are too high, supported with appropriate citations to legal authority as required by our briefing rules. *See* TEX. R. APP. P. 38.1(i). This, he has not done. We overrule Nearman's third issue.

## MOTION FOR NEW TRIAL

In his issue two, in his list of issues, Nearman questions whether there is "error on the record" considering he and Eyre were not present at the hearing. In his issue four, in the list, he questions if the trial court erred in denying his motion for new trial. In his fifth issue in the list, he asks "[d]id the trial court err in Procedural Due Process?" In the body of the brief, in issue four, he contends there was an error on the face of the record. In the argument under this issue, he asserts the evidence is insufficient to prove he was aware that a hearing was to be held September 18, 2017. He concludes by stating the trial court should have granted his motion for new trial and "allow procedural due process to occur." In his fifth issue in the body of his brief, Nearman contends the trial court erred in denying the motion for new trial. He argues that his failure to answer was not intentional or a result of conscious indifference. He further argues that the "trial court judge should have granted the request and Motion for New Trial in accordance with Craddock, in order to ensure that the rights of procedural due process, and set up meritorious defense, which would undoubtedly alter the current Default Judgment."

5

**Standard of Review and Applicable Law**

We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). The test for abuse of discretion in ruling on a motion for new trial is whether the trial court acted without reference to any guiding rules or principles or whether the trial court's actions were arbitrary or unreasonable under the circumstances of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Ward v. Hawkins*, 418 S.W.3d 815, 824 (Tex. App.−Dallas 2013, no pet.).

When moving for new trial to set aside a post-answer default judgment rendered upon failure to appear for trial, a defendant must (1) prove his failure to appear was not intentional or the result of conscious indifference, but was due to mistake or accident, (2) set up a meritorious defense, and (3) show that a new trial would not cause delay or otherwise injure the plaintiff. *Lerma*, 288 S.W.3d at 925-26; *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). If a defaulting party meets his burden to establish all three elements, then the trial court abuses its discretion if it fails to grant a new trial. *Lerma*, 288 S.W.3d at 926. If the motion for new trial and accompanying affidavits fail to establish any prong of the test, then the trial court's denial of a new trial will be upheld. *See Ivy v. Carrell*, 407 S.W.2d 212, 215 (Tex. 1966).

In determining whether the failure to appear was due to intentional disregard or conscious indifference we must look to the knowledge and acts of the defendant. *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994). If the factual assertions in the defendant's affidavit are not controverted, the defendant satisfies his burden if he sets forth facts that, if true, negate intentional or consciously indifferent conduct. *Id*. In determining if the defendant's factual assertions are controverted, the court looks to all the evidence in the record. *Id*.

"Conscious indifference" means the failure to take some action that would appear obvious to a reasonable person under similar circumstances. *Jaco v. Rivera*, 278 S.W.3d 867, 872 (Tex. App.−Houston [14th Dist.] 2009, no pet.). The controlling fact is whether there was a purposeful or bad faith failure to appear. *Craddock*, 133 S.W.2d at 125. Proof of an adequate justification, such as accident, mistake, or other reasonable explanation, negates the intent or conscious indifference for which reinstatement can be denied. *Lerma*, 288 S.W.3d at 926.

**Analysis**

The Synergy entities, Deify, Eyre, and Nearman were represented by attorneys James W. Volberding and Keith Mayo beginning in February 2017. Those attorneys withdrew in June 2017, and these defendants had no legal representation until after the final judgment was rendered on September 18, 2017. They hired another attorney who filed a request for findings of fact and conclusions of law on October 9 and a motion for new trial on October 19. In the motion for new trial, they asserted that their failure to appear at the September 18 trial was not intentional or the result of conscious indifference, they had a meritorious defense, and a new trial would not cause delay or injure the plaintiff.

We will address the question of whether their failure to appear was intentional or the result of conscious indifference. In support of the motion are the nearly identical declarations of Nearman and Eyre. In the declarations, both defendants stated that they did not know the case was set for trial on September 18, 2017, and they relied on their attorneys to keep them informed of any important developments. Because Volberding told them that no trial would occur until after they were deposed, and they were never deposed, they had no reason to believe that a trial setting was imminent. They explained that they were registered to receive emails regarding filings in this case but Nearman received one hundred or more emails a day and Eyre received fifty per day. They each received approximately 150 emails regarding case filings, but did not know which were important, and determined that most were not critical to an understanding of the case. They did not understand that it was critical to read every one of the documents filed in the case. Therefore, they relied on their attorneys to keep them informed of important events and developments. Neither defendant noticed the email from the e-filing system dated June 1, 2017 regarding the motion to withdraw. They never received notice of the July 27 order granting the motion to withdraw, and they believed that they were still represented by counsel until they learned of the default judgment on September 22. Neither defendant recalled Volberding and Mayo informing him that the case was set for trial on September 18. However, they explained further, it is possible that there was some communication to that effect, but neither remembered any such communication, and both were unaware that the case would be called to trial on September 18.

The record shows that Nearman and Eyre, early in the case, registered to receive electronic notifications of the case filings. They admitted to receiving 150 such notifications. Electronic service is complete on transmission of the document to the serving party's electronic filing service

7

provider. TEX. R. CIV. P. 21a(b)(3). The record shows that, on April 19, 2017, the defendants were served with notice of the September 18 trial setting and that they did not open the notification.

On April 19, and again on April 28, Volberding notified them by email, telling them there is a September trial date. On April 20, Volberding texted Eyre telling him there is a trial setting in September. On April 29, Volberding sent an email to both referencing a September trial date. On May 16, Eyre and Nearman participated in a conference call with Volberding and Mayo during which they discussed the September 18 trial date. According to Volberding, Eyre and Nearman indicated that they understood the trial date. On May 24, Volberding sent texts to both Nearman and Eyre warning that they were 110 days from jury trial. On May 27, Volberding sent them a status report email stating that the jury trial is September 18 and warning that they have until May 31 to either fight the case or settle, or Volberding and Mayo would withdraw. On that same day, Volberding sent Eyre a text telling him to check his email inbox.

On May 31, Volberding sent each of them an email explaining why he and Mayo needed to withdraw, attaching a proposed motion to withdraw, stating they would file it the same day, and stating the jury trial date is September 18, 2017. Volberding and Mayo filed a motion to withdraw which was not opened by Nearman or Eyre. However, the record shows that Nearman opened the e-serve notice containing the proposed order to withdraw. On June 1, Nearman texted Volberding saying, "Wes since you filed the motion to remove yourself from the case, we request all documentation, files, submissions" so they could provide it to new counsel. On June 5, Volberding's office emailed a file marked copy of the motion to withdraw. On July 8, Volberding's office sent an email notice of the hearing on the motion to withdraw and, on July 18, the e-filing service notified Nearman and Eyre of that hearing. Nearman and Eyre continued to receive e-service notices, and the record shows that Nearman opened two notices in September.

Nearman's argument is that he missed the trial because he did not know the trial date, he relied on his attorneys to tell him the trial date, and they did not do so. Both Nearman and Eyre provided this explanation in their respective declarations in support of the motion for new trial. However, the record includes evidence specifically controverting their contentions. Both received electronic notifications of case filings. Additionally, the record shows that Volberding provided notice of the trial date in five separate emails. He also sent Nearman one text and Eyre two texts notifying them of the trial date. Significantly, Nearman and Eyre participated in a conference call with Volberding and Mayo during which they discussed the trial date. The record shows that

Nearman knew three and a half months before the trial date that Volberding and Mayo withdrew. He even anticipated needing to provide the record of the case to new counsel. A reasonable person under these circumstances would have hired another attorney or at least opened and read the 150 e-service notifications to determine the status of the lawsuit. *See Jaco*, 278 S.W.3d at 872. Neither Nearman nor Eyre took any action. Nearman has not proven an adequate justification negating the intentional failure to appear or conscious indifference to appearing. *See Lerma*, 288 S.W.3d at 926. Nearman knew of the litigation, had filed a response, received regular e-filings, was aware that his attorneys had withdrawn, and still failed to take any action. The record supports the trial court's determination that Nearman knew the trial date and his failure to appear was due to intentional or consciously indifferent conduct. *See Evans*, 889 S.W.2d at 269. The trial court could have interpreted this as a purposeful or bad faith failure to appear. *See Craddock*, 133 S.W.2d at 125. Because Nearman failed to prove this prong of the test, we need not discuss the remaining prongs. Accordingly, the trial court did not abuse its discretion in denying the motion for new trial. We overrule Nearman's issues four and five.

<u>DISPOSITION</u>

Having overruled all of Nearman's issues, we ***affirm*** the trial court's judgment as to Nearman.

Pursuant to the rules of appellate procedure, in the absence of a brief filed by Eyre, we may regard the appellee's brief as correctly presenting the case against him. *See* TEX. R. APP. P. 38.8(a)(3); ***Harkins v. Dever Nursing Home***, 999 S.W.2d 571, 573 (Tex. App.−Houston [14th Dist.] 1999, no pet.). Accordingly, we ***affirm*** the trial court's judgment as to Eyre.

<u>JAMES T. WORTHEN</u>
Chief Justice

Opinion delivered October 3, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 3, 2018

NO. 12-18-00001-CV

**LUKE EYRE AND NATHAN NEARMAN,**
Appellants
V.
**EASTAR INVESTMENTS, INC.,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 16-2265-C)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **LUKE EYRE AND NATHAN NEARMAN**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*