EX PARTE BOBBY GENE THREET.

No. A-7611. Decided March 23, 1960.
(333 S.W. 2d Series 361)

Baldwin & Goodwin by Joe B. Goodwin, of Beaumont, for Relator.

W. C. Walley, Jr., Everett B. Lord, both of Beaumont, and Jack C. Eisenberg, of Austin, for respondent.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This is a habeas corpus case filed in this Court by Bobby Gene Threet. He has been held in contempt by a district court for refusing to make support payments pending a divorce action. He denied that he had been married, and here contends that the district court was without power to require such payments because there was no evidence introduced at the hearing that there had ever been any marriage.

The alleged wife contended that there had been, in effect, a secret common law marriage. Since the question of marriage had been put in issue, and since the person seeking support had failed to introduce proof tentatively establishing such a common law marriage (i.e., proof that the couple lived and held themselves out publicly as husband and wife), we here hold that the trial court was without power to require the making of support payments. Threet will therefore be discharged.

We shall refer to the alleged wife as the plaintiff. Threet will be called the defendant.

It is conceded that there had been no ceremonial marriage. The plaintiff at the time of the alleged common law marriage was 15 years old, a student in junior high school. She began dating the defendant, then 20 years of age, around December of 1958. She testified that on February 14, 1959, she and the defendant entered into an agreement to become husband and wife. The agreement was followed by sexual intercourse at her mother's house. She and the defendant, she testified, continued

to engage in acts of intercourse from February 14 until the middle of April, 1959, which was the last time she "dated" him.

All of the acts of intercourse, she said, occurred at her parents' house or at the home of defendant's parents. After such meetings, the one away from home would "go home." The couple was together mainly after school while the parents were working. They never spent an entire night together. When her parents were away for a weekend, the defendant stayed at her house until dawn.

The plaintiff candidly admitted that she and the defendant never established a home together. She never moved in with defendant at his house, nor he into hers. She continued to give her parent's residence as her residence. Neither moved any of his or her clothes or personal effects into any common room or apartment.

The plaintiff continued to go to school until the end of the term. She continued to use her maiden name and told no one there that she was married. After the alleged marriage, she applied for work in her own name. She put on the application that she was "single." She testified that she told no one at her place of employment that she was married. Her father claimed her as a dependent. The defendant did not. No charge accounts were opened in the joint name, and she never made any purchases as "Mrs. Threet."

She testified that the defendant had given her a ring, a wedding band, on the day of their alleged agreement, and that she had worn it continuously since. But she also testified that no one, not even her mother or her schoolmates, had ever noticed it.

The plaintiff further testified that on the day following the alleged marital agreement, she introduced defendant to her brother and his girl friend as her husband. About a month thereafter, when the couple were at her mother's house, the mother unexpectedly returned and became suspicious of their conduct. The plaintiff had not theretofore told her mother, or the defendant's parents, of the alleged marriage. The mother became suspicious because of the way the house, particularly the bedroom, looked. The plaintiff said that she thereupon told her mother that she and defendant were married.

The plaintiff also testified that, outside the presence of the

defendant, she had told her sister of her marriage. The sister did not take the stand. The husband of the sister, called by the defendant to the stand, testified that though he had worked at the same place the defendant had, and had introduced the plaintiff and Threet to each other, he never had heard of the alleged marriage until the divorce suit was filed.

Except for the people named above, the only others the plaintiff said she told of the marriage were a filling-station operator and her cousin, a local attorney. These conversations took place about a month after the alleged agreement and outside the presence of the defendant.

Since in this habeas corpus action the question is whether there was any evidence to support the action of the trial court, the evidence of the defendant Threet and witnesses called by him will not be set out. It is sufficient to say that he denied the marriage. He admitted acts of intercourse with plaintiff, but testified that he never heard of being married until shortly before he was sued for divorce.

**1** A valid marriage is a prerequisite to a support order in an action for divorce. The existence of the marriage must be admitted or shown before such a decree or order properly can be made. Where the marriage is denied, as it was here, the marriage must be at least tentatively established. Stated differently, when the marriage is put in issue, the burden is upon the party seeking support to establish at least a prima facie case of marriage. See Annotation, 11 A.L.R. 2d 1040;[1] 17 American Jurisprudence 659;[2] 27A Corpus Juris Secundum 902,[3] Keezer, Marriage and Divorce (3rd ed.) 604, Sec. 561.

**2** What elements, then, need be shown to make a prima facie or tentative showing of a common law marriage?

---

1.—"The existence of a marriage relationship is, in the absence of statute, a condition precedent to an allowance of alimony, counsel fees, and suit money pendente lite in actions by the wife for divorce, alimony, and separate maintenance." 11 A.L.R. 2d 1040, at 1042.

2.—The rule quoted above is the majority rule, but a few jurisdictions go to the extent of requiring the establishment of the marriage by a preponderance of the evidence. The Supreme Court of Florida in 1952 held that there must be a *conclusive* showing of a common law marriage before support pendente lite could be ordered. The court there rejected the requirement of a mere "prima facie" showing as being too soft in common law marriage cases. Fincher v. Fincher, 55 So. 2d 800. The majority rule is stated, however, in American Jurisprudence. "It is generally held that a prima facie showing as to such proof is all that is required." 17 Am. Jur. at 660.

3.—"The wife must prove the marriage prima facie, and prima facie proof is sufficient * * * ." 27A C.J.S. at 903.

In Texas, three elements must exist: (1) an agreement to be husband and wife; (2) living together as husband and wife; and (3) a holding out to the public that the couple are husband and wife. *Grigsby v. Reib.* 105 Texas 597, 153 S.W. 1124, L.R.A. 1915E, 1 (1913); *Shelton v. Belknap,* 155 Texas 37, 282 S.W. 2d 682 (1955).[4]

In the *Grigsby* case, supra, this Court announced that the marriage was more than a contract; it is a status. The living together *as man and wife* and the public and open holding out that the two are man and wife are as essential to a valid common law marriage as the agreement itself. Without these elements, there is no common law marriage.

**3** It is our opinion that the facts above set out do not constitute evidence that the couple lived together *as man and wife* or that they held out to the public that they were man and wife. As a matter of fact, the plaintiff apparently wanted to keep the alleged marriage a secret except from four or five of her closest friends. They never moved into or occupied, publicly, a common residence or room. She continued using her own name and publicly represented to those at her school and at her place of work that she was a single person. It was held in *Drummond v. Benson* (Texas Civ. App., 1939), 133 S.W. 2d 154, writ refused, that isolated reference to a person as being his or her husband or wife constituted no evidence of a common law marriage.[5] Similarly, the introduction of defendant as her husband to two close friends, and telling two or three others that she was married to defendant, constituted no evidence that plaintiff and Threet were living together as husband and wife and holding themselves out to the public as man and wife. Under the Texas decisions, there can be no secret common law marriage as such. The secrecy is inconsistent and irreconcilable with the requirement of a public holding out that the couple are living together as husband and wife.

**4** This opinion is, of course, not determinative of whether there was or was not a common law marriage. That question

---

4.—To the same effect are Drummond v. Benson, 133 S.W. 2d 154 (1939), writ refused; Manire v. Burt, 121 S.W. 2d 630 (1938), writ refused; Welch v. State, 151 Texas Crim. Rep. 356, 207 S.W. 2d 627, 1948; Moore v. Jordan, 328 S.W. 2d 343 (1959), writ ref,. N.R.E.; Caine v. Caine, 314 S.W. 2d 137 (1958), no writ; Tijerina v. Botello, 207 S.W. 2d 136 (1948), no writ.

5.—The Court of Civil Appeals there reversed and rendered a judgment based on jury findings of a common law marriage, and this Court gave the opinion a straight refusal.

will be determined when the action is tried on its merits. This opinion does hold that on the preliminary hearing for support, where the question of marriage was put in issue, there was no evidence of two vital elements of a common law marriage. Under those circumstances, the trial court was without power to require Threet to make support payments pending the trial of the divorce action.

The Relator Bobby Gene Threet is discharged.

Opinion delivered March 23, 1960.

MR. JUSTICE SMITH dissenting.

The court has substituted its findings for that of the trial court. The trial court's judgment is supported by evidence. Respondent proved a prima facie common law marriage. It was alleged and proved that relator, a man 21 years of age, and respondent agreed to be husband and wife on or about February 14, 1959. It was alleged and proved that they lived together as husband and wife until on or about April 7, 1959. It was alleged and proved that they held themselves out to the public as being husband and wife. Common law marriages are recognized in Texas. The trial court has conducted a trial and heard the evidence, and on November 2, 1959 entered a judgment directing the relator to pay into the Jefferson County Child Support Office on Friday, November 6, 1959, and on each Friday of each week thereafter during the pendency of the suit, the sum of $25.00 for the support and maintenance of the respondent. There is no evidence that the unborn child mentioned in the record is not the natural result of the prima facie common law marriage.

This habeas corpus proceeding is a collateral attack on the judgment, declaring that a common law marriage existed. This court has no jurisdiction to weigh the evidence to determine whether it preponderates against the judgment. See Ex Parte Kollenborn, 154 Texas 223, 276 S.W. 2d 251; Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184.

The court states that its opinion is not determinative of whether there was or was not a common law marriage. It is difficult for me to conceive of a more effective manner that the court could adopt to effectually preclude a finding in favor of the respondent on the question of common law marriage. It is for the legislature and not this court to decide whether or

not common law marriages will continue to have legal sanction in Texas.

The relator should be remanded to the Sheriff of Jefferson County to be by him confined in accordance with the order of the trial court.

Opinion delivered March 23, 1960.