

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

## NO. 2-08-371-CV

---

IN THE ESTATE OF GEORGE ANTHONY
WALKER, JR., DECEASED

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

The sole issue in this case is whether the trial court's findings of fact underlying its conclusion of law that there was no informal marriage[2] between Pamela Walker and George Walker are against the great weight and preponderance of the evidence. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

[2] "Informal marriage" is the legal term for the colloquial term "common-law marriage."

## Background

Pamela and George met in 1995 and began living together in 1998. They built a home together in 2001, moved into it in 2002, and lived there together until George's death in 2005.

Pamela filed a petition in George's estate's probate proceedings, seeking a declaration that she and George had entered into an informal marriage and that she was his widow. The issue was tried to the bench.

Pamela testified that George bought a wedding ring for her in 1999. She said they considered a marriage ceremony after they moved into the new house in 2002 but someone at the courthouse told them that "because of [their] status of living together as husband and wife, [they] were already married," so they decided the ceremony was unnecessary.

Pamela testified that she and George agreed to be husband and wife and that "that's how [they] were introduced. That's how [their] bills and stuff and everything was" and that they "[p]retty much" told the world that they were husband and wife. But she said her name was not on the deed to the new house because her credit was bad. She also said that they filed separate income tax returns because tax preparers told them "it was the best way" to file. Pamela acknowledged that she represented that she was unmarried when she applied for public assistance in 2002 to pay for an operation for her son,

but she said she "had no choice" because George was off work, having broken his foot, and they had no income or insurance. She also admitted that she indicated she was divorced on an occupational injury form in 2003.

George and Pamela took several vacations together, including trips to San Antonio, Las Vegas, Pamela's family reunion in Amarillo, and George's union meeting in Dallas. Pamela said they bought a dog together and that George treated her children as his own. She testified that she and George were planning a "big, formal wedding" for August 2006, but George died in October 2005.

Mack Ingram testified that George called Pamela his wife and his "old lady" and that George introduced Pamela as his wife the first time Ingram met her.

Jordan Brown, Pamela's son from a prior marriage, identified George as his stepfather and testified that he introduced George to school friends as his father.

Brittany Brown, Pamela's daughter from a prior marriage, testified that she, too, introduced George to her friends as her father and that he would go to her school when she got into trouble there.

3

Linda Boughton, a school nurse at Jordan and Brittany's high school, testified that Pamela referred to George as her husband and that he referred to her as his wife.

Ruben Alaniz, a coworker of George's for twelve or thirteen years, testified that George referred to Pamela as his wife.

The trial court made the following findings of fact, among others; these are the specific findings Pamela challenges on appeal:

16.  [George and Pamela] lived together at 5217 [Brookwood] Drive, Wichita Falls, Wichita County, Texas and the [m]ortgage on the property dated 4-1-02 lists [George], a single man. [Pamela] is not listed on the deed.

. . . .

18.  [George and Pamela] never filed income tax returns as husband and wife.

19.  They planned a big wedding in August of 2006[, but] it never took place.

20.  [Pamela] claimed to be single when she filed for CHIPS for her daughter's insurance.

21.  [Pamela] claimed on 8-22-03 to be divorced when she filed for an occupational injury with the Wichita Falls Independent School District.

22.  [Pamela] marked "single" on a box on [a] WFISF employee document.

. . . .

4

28. [Pamela and George] did not agree to be married, but they did live together in this State, but not as husband and wife.

The trial court also made the following conclusions of law:

- The evidence was factually insufficient to support the required elements of an informal marriage[;]

- An informal marriage did not exist between [Pamela and George; and]

- [Pamela] is not the widow and surviving spouse of [George].

Pamela died on July 9, 2008, and the temporary administrator of her estate is pursuing this appeal. In a single issue, she challenges the factual sufficiency of the evidence to support the findings of fact recited above.

**Standard of Review**

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and

5

weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

**Informal Marriage**

The elements of an informal marriage are that a man and woman (1) agreed to be married, (2) lived together in this State as husband and wife after the agreement, and (3) in this State represented to others that they were married. Tex. Fam. Code Ann. § 2.401(a)(2) (Vernon 2006).

To establish an agreement to be married, "the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The agreement to be married may be established by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). The testimony of one of the parties to the marriage constitutes direct evidence the parties agreed to be married. *See Eris*, 39 S.W.3d at 714 (citing *Collora v. Navarro*, 574 S.W.2d 65, 70 (Tex.1978)); *In re Estate of Giessel*, 734 S.W.2d

6

27, 32 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). The conduct of the parties and evidence of cohabitation and representations to others may constitute circumstantial evidence of an agreement depending on the facts of the case. *See Russell*, 865 S.W.2d at 933; *Eris*, 39 S.W.3d at 714.

The element of holding out requires more than occasional references to each other as "wife" and "husband." *Flores v. Flores*, 847 S.W.2d 648, 653 (Tex. App.—Waco 1993, writ denied); *see also Ex parte Threet*, 160 Tex. 482, 485–86, 333 S.W.2d 361, 363–64 (1960) (finding no evidence of holding out where woman introduced man as her husband to two or three friends, told a few others that she was married, and wore wedding band given to her by man); *Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621, at *1 (Tex. App.—Dallas March 29, 2006, no pet.) (mem. op.) ("[I]solated references to each other as husband and wife alone do not establish a holding out[.]")

**Discussion**

In this case, Pamela's testimony is direct evidence that she and George agreed to be married. There is also evidence that they lived together in Texas as husband and wife after agreeing to be married, and there is evidence that they represented to others that they were married. Thus, there is some evidence to support all three informal-marriage elements. But there is also substantial evidence to the contrary, such as Pamela's and George's separately-

7

filed income tax returns, the absence of Pamela's name on the deed to their residence, and Pamela's assertion that she was single or divorced on various documents. The question before us is whether the evidence supporting the trial court's findings that there was no informal marriage is so weak, or so contrary to the overwhelming weight of all the evidence, that the findings should be set aside. *See Pool*, 715 S.W.2d at 635; *Garza*, 395 S.W.2d at 823.

Appellant cites two cases for the proposition that conflicting evidence similar to the evidence in this case will support a finding of an informal marriage. In *Estate of Giessel*, Kuchera testified that she and Giessel had agreed to be married and thereafter lived together as husband and wife for twenty years until Giessel's death. 734 S.W.2d at 28. Some witnesses testified that Giessel referred to Kuchera as his wife, but other witnesses testified that he denied being married and vowed never to marry. *Id.* at 29–30. During the purported informal marriage, Kuchera had executed a mineral lease as "Rosie Kuchera, a widow," and Giessel had executed a mineral lease as "John J. Giessel, a single man." *Id*. at 28. The parties also filed separate tax returns. *Id.* at 30. A jury found that Kuchera and Giessel had been informally married. *Id*. at 28. On appeal, Giessel's family challenged the legal and factual sufficiency of the evidence to support the informal-marriage finding, and the

8

court of appeals held that the evidence was both legally and factually sufficient. *Id.* at 31, 32.

A similar fact pattern emerged in the other case Appellant relies on, *Romano v. Newell Recycling of San Antonio, L.P.*, No. 04-07-00084-CV, 2008 WL 227974 (Tex. App.—San Antonio Jan. 30, 2008, no pet.). Sara Guerro testified that she and Alejandro Gonzales began cohabiting in 1990 and soon thereafter began referring to themselves as husband and wife. *Id.* at *4. She said that Gonzales introduced her to his friends as his wife. *Id*. at *5. Some witnesses testified that Gonzales referred to Guerro as his wife, but others said he referred to her as his girlfriend. *Id.* at *5. In 1997, Guerro signed loan documents that described her as a single person; and when Gonzales died, she filled out an insurance claim form, and in answer to the question whether Gonzales was married at the time of his death, she wrote, "not to my knowledge." *Id*. at *4. The trial court found that Guerro and Gonzales were informally married, and the court of appeals held that the evidence was legally and factually sufficient to support that finding. *Id.* at *6.

We agree with Appellant that the evidence in *Estate of Giessel* and *Romano* is similar to the evidence in this case. But we disagree about the significance of those similarities. With regard to factual sufficiency, neither case stands for the proposition that a fact pattern like the one in our case

9

precludes a finding of no informal marriage, as Appellant contends. Instead, as the *Giessel* court noted, "There was substantial evidence before the jury to support either an affirmative or negative answer to the [informal-marriage] issue." 734 S.W.2d at 32. And as the *Romano* court observed, "[T]hese conflicts do not preclude a finding that a common law marriage existed . . .[;] rather, the conflicts go to the weight of the evidence and were for the trial court to resolve." 2008 WL 227974, at *6. Thus, the real significance of *Giessel* and *Romano* to the case before us is the application of the factual-sufficiency standard of review: When there is conflicting evidence about the existence of an informal marriage like the evidence in those cases and in this case, whether the parties entered into an informal marriage is a question for the factfinder.

In this case, the trial court resolved the conflicting evidence by finding that Pamela and George had not entered into an informal marriage. Viewing all of the evidence, we cannot say that the evidence supporting the finding is so weak, or the weight of the contrary evidence so overwhelming, that the answer should be set aside and a new trial ordered. *See Pool*, 715 S.W.2d at 635; *Garza*, 395 S.W.2d at 823. Thus, the evidence is factually sufficient to support the trial court's finding, and we overrule Appellant's sole issue.

10

**Conclusion**

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: July 9, 2009

11