# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00358-CV

---

**Samantha Lopez, Appellant**

**v.**

**Felix Lengyel, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
NO. 22-3153-FC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Samantha Lopez filed for divorce from appellee Felix Lengyel, alleging that the two were informally married in August 2020. Lengyel filed a no-evidence motion for summary judgment, arguing that there was no evidence that: (1) the parties agreed to be married, or (2) the parties held themselves out to others in Texas as husband and wife. After Lopez responded, the trial court granted Lengyel's motion, and this appeal followed. By three issues that we construe as two, Lopez argues that the trial court abused its discretion by: (1) granting Lengyel's objections to her summary judgment response and evidence, and (2) granting Lengyel's no-evidence motion for summary judgment. Because we conclude that Lopez presented more than a scintilla of evidence as to each of the challenged elements, we reverse and remand.

## I. BACKGROUND

According to the summary judgment evidence, Lopez and Lengyel are both professional online streamers. The two began a romantic relationship around May 2018 and moved to Texas in 2019. According to Lopez, during COVID-19, she and Lengyel began having discussions about their relationship status, including that the two were married, despite not having a formal, ceremonial wedding. Lopez testified in her deposition that in May 2020, Lengyel told her, "[Y]ou are already my wife." At some point during COVID-19, Lengyel, who is a Canadian citizen, returned to Canada. Between May 2020 and August 2020, the two discussed Lopez flying up to visit him. However, Lopez testified that because of COVID-19 restrictions, she was only permitted to visit him if the two were married. Thus, in August 2020, she and Lengyel agreed that they would represent to the Canadian government that the two were married in Texas, and Lengyel's mother would verify the existence of their marriage, if necessary. Lopez was able to successfully travel to Canada after informing several Delta airline employees in Austin and "[a]t least three" Canadian border agents that she and Lengyel were married. Lopez specifically testified, "[W]e held ourselves out as married to the Canadian government in August 2020." Lopez further testified that, while in Canada, she told viewers on a livestream that she and Lengyel were "common law married."

Lopez and Lengyel stayed in Canada for "[a]round two months" before returning to their home in Williamson County. Lopez testified that Lengyel "was adamant that it was best for [their] reputations" to keep the marriage "a secret." Lopez acknowledged that she went along with this "to make him happy." Despite this tacit agreement, Lopez testified that she also told "tens of thousands" of people that she and Lengyel were married, including her family, Lengyel's mother and father, her housekeepers, two friends, several members of law

2

enforcement, and "people at the bills company." Additionally, Lopez testified that Lengyel told "[t]he housekeepers," "her mother" on at least three occasions, "at least six" members of her family, his mother, a mutual friend, and "the bills company people" that they were married. Lopez also testified that she had used Lengyel's surname as her own "[o]n plenty of packages and orders and deliveries" and that she gave Lengyel "a couple of [anniversary] cards."

During a temporary orders hearing, Lopez's mother testified that she added Lengyel's phone to the "family plan" and two of his cars to her car insurance. Lopez's mother testified that she did this because she believed Lengyel and her daughter were married and that she would not have done so had she believed they were just dating. Although Lopez's mother conceded that Lengyel did "not directly" tell her that he and Lopez were married, she witnessed him refer to Lopez as his wife in Spanish while communicating with the housekeepers and "would always agree" when the housekeepers referred to Lopez as his wife. Additionally, one of the couple's housekeepers testified that Lopez and Lengyel "were living together as like a marriage." The housekeeper testified that, though she "didn't talk to [Lengyel] much," she believed he and Lopez were married based on the time she had spent in their presence.

Evidence was also introduced indicating that Lopez referred to Lengyel as her "boyfriend" multiple times in online posts, even after August 2020. Lopez explained that she used this verbiage to avoid "very long drawn out arguments" with Lengyel and to prevent the fact of their marriage "from leaking on stream." Lopez explained that it was not uncommon for professional streamers, especially women, to hide their relationship status from their fans, out of concerns for both privacy and marketability. In May 2023, after Lopez filed for divorce, Lengyel purchased a wedding ring for Lopez while the two were in California. Lopez testified that she had consistently worn that ring while in Texas.

Ultimately, the trial court granted Lengyel's no-evidence motion for summary judgment and after it dismissed ancillary claims brought by Lopez, its judgment became final. This appeal followed.

## I. NO-EVIDENCE SUMMARY JUDGMENT

**A. Standard of Review & Applicable Law**

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024) (quoting *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022)). A no-evidence motion for summary judgment "allows a party to seek summary judgment without presenting evidence by asserting, after adequate time for discovery, that no evidence supports one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial." *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). A no-evidence motion for summary judgment is appropriate if "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Lozada v. Posada*, 718 S.W.3d 262, 266 (Tex. 2025) (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). "If the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper." *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023).

The existence of an informal marriage is generally a fact question and the party seeking to establish the existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence. *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App.—Texarkana 2013, no pet.). "In Texas, three elements must exist: (1) an agreement to be husband and wife; (2) living together as husband and wife; and (3) a holding out to the public that the couple are husband and wife." *Ex parte Threet*, 333 S.W.2d 361, 364 (Tex. 1960) (orig. proceeding). "An informal marriage does not exist until the concurrence of all three elements." *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Lengyel challenged the existence of evidence to support two elements of Lopez's informal marriage claim: (1) an agreement to live as husband and wife, and (2) holding out to the public that they were married. We begin by addressing the objections to Lopez's summary judgment response, and then we address these elements in turn.

## B.     Analysis

### 1.     Objections to Summary Judgment Response

In the "Issues Presented" section of her brief, Lopez argues that : (1) the trial court abused its discretion by sustaining Lengyel's objections to her summary judgment response; and (2) the trial court abused its discretion by sustaining Lengyel's objection to Exhibit 4 of her summary judgment evidence. However, aside from Exhibit 4, Lopez does not detail in her brief which exhibits the trial court improperly excluded or provide any reasoning as to why the trial court erred by excluding those exhibits. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Additionally, the trial court did not sustain Lengyel's

5

objection to Exhibit 4. Rather, it noted that Lengyel withdrew his objection to this exhibit. Lengyel asserts, and we agree, that Lopez has failed to adequately brief this issue. *See id.*; *Rubsamen v. Wackman*, 322 S.W.3d 745, 746 (Tex. App.—El Paso 2010, no pet.) ("It is Appellants' burden to discuss their assertions of error, and we have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error."). Thus, we overrule this issue.

### 2. Evidence of an "Agreement"

We turn now to the merits of the trial court's no-evidence summary judgment. "To establish that the parties agreed to be husband and wife, it must be shown that they intended to create an immediate and permanent marriage relationship, not merely a temporary cohabitation that may be ended by either party." *Thomas v. Doolittle*, No. 03-23-00498-CV, 2024 WL 4394315, at *6 (Tex. App.—Austin Oct. 4, 2024, no pet.) (mem. op.) (quoting *Burden*, 420 S.W.3d at 308). "[A]n agreement to be married may be established by direct or circumstantial evidence." *Russell v. Russell*, 865 S.W.2d 929, 930 (Tex. 1993). For instance, "[e]vidence of an agreement to be married may be inferred from cohabitation and representations." *Winfield v. Renfro*, 821 S.W.2d 640, 646 (Tex. App.—Houston [1st Dist.] 1991, writ denied). But, given society's modern attitudes towards cohabitation, "evidence of holding out must be particularly convincing to be probative of an agreement to be married." *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied).

Lopez attached to her summary judgment response transcripts of testimony from a temporary orders hearing and from her deposition. During both proceedings, Lopez testified that

she and Lengyel agreed to be married. Specifically, during the temporary orders hearing, Lopez testified:

> A.    [Lengyel] had returned to Canada in 2020 to renew his visa, I believe. And during that downtime we had missed each other very, very much. And we agreed that we were already living as married in Texas and that we would have no complications proving to the Canadian government that we were married in Texas. And the only way that I could visit during COVID is if we were married and if we were immediate family. Girlfriends did not apply. It was very specific.
>
> . . . .
>
> Q.    And did he agree with you that you were common law married—
>
> A.    Yes.
>
> Q.    –in August of 2020?
>
> A.    Yes.

Additionally, Lopez agreed that Lengyel and his mother were the ones who researched what was required to prove to the Canadian government that she and Lengyel were married and that she simply "did what they told [her]" to do.

During her deposition, Lopez acknowledged that she and Lengyel "agreed that [they] were husband and wife prior to August of 2020" but that they "made an official agreement [to be married] in August of 2020" when they decided to represent to the Canadian government that they were married. Lopez explained "[f]rom that point on, there was no question if we were husband and wife or not."

We conclude that Lopez raised more than a scintilla of evidence as to whether she and Lengyel agreed to be married. Specifically, Lopez's testimony that she and Lengyel "made an official agreement [to be married] in August of 2020," coupled with evidence that Lengyel

7

told Lopez that they were "already married" and encouraged her to tell the Canadian government that they were married, is more than a scintilla of evidence to support this element. *See Thomas*, 2024 WL 4394315, at *6 ("The testimony of one of the parties to the marriage constitutes some direct evidence that the parties agreed to be married." (quoting *Small*, 352 S.W.3d at 283)); *see also Lewis v. Anderson*, 173 S.W.3d 556, 560 (Tex. App.—Dallas 2005, pet. denied) ("Lopez's testimony that in the years after the divorce, she and Lewis agreed they were married and that Lewis told her they were married is at least some evidence that Lewis did agree to be married to Anderson after the divorce."); *cf. Russell*, 865 S.W.2d at 932 ("A forthright assertion of marriage with the consequence of liability . . . may . . . be far more probative of a tacit agreement to be married." (quoting Joseph W. McKnight, *Family Law: Husband & Wife*, 44 Sw. L.J. 1, 2–3 (1990) (footnotes omitted))).

### 3. Evidence of "Holding Out"

Next, Lopez contends that there is more than a scintilla of evidence to support a finding that Lopez and Lengyel "represented to others that they were married." *See* Tex. Fam. Code § 2.401(a)(2). "The statutory requirement of 'represented to others' is synonymous with the judicial requirement of 'holding out to the public.'" *Eris v. Phares*, 39 S.W.3d 708, 714–15 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). "[S]tanding alone, occasional references to each other as 'husband' and 'wife' and the like are insufficient to establish an informal marriage." *Id.*; *see Ex parte Threet*, 333 S.W.2d at 364 ("[T]he introduction of defendant as her husband to two close friends, and telling two or three others that she was married to defendant, constituted no evidence that plaintiff and Threet were . . . holding themselves out to the public as man and wife."). Rather, we consider "whether the couple had a reputation for being married."

*Eris*, 39 S.W.3d at 715. "However, 'there is no bright-line quantitative test for what constitutes sufficient evidence of holding out to others.'" *McMullen v. Huffman*, No. 01-23-00752-CV, 2024 WL 3872934, at *14 (Tex. App.—Houston [1st Dist.] Aug. 20, 2024, pet. denied) (mem. op.). "[S]ecrecy is inconsistent and irreconcilable with the requirement of a public holding out that the couple are living together as husband and wife." *Ex parte Threet*, 333 S.W.2d at 364–65. But "a marriage that is secret from some persons can still be a common-law marriage." *Winfield*, 821 S.W.2d at 649, 651 (evidence of holding out was legally sufficient even though "the marriage seems to have been a secret from everyone except Renfro's relatives and acquaintances"); *Thomas*, 2024 WL 4394315, at *8. And "representation may be proven 'by conduct and actions of the parties. Spoken words are not necessary to establish representation as husband and wife.'" *Thomas*, 2024 WL 4394315, at *8; *Small*, 352 S.W.3d at 285. Additionally, to satisfy this element, there must be some evidence that both parties held themselves out as husband and wife. *Mills v. Mest*, 94 S.W.3d 72, 74 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *In re Marriage of Miller & Boldery*, No. 12-23-00230-CV, 2024 WL 2064098, at *4 (Tex. App.—Tyler May 8, 2024, no pet.) (mem. op.).

Here, Lopez testified that she frequently used Lengyel's last name as her own when making purchases. Additionally, Lopez testified that she and Lengyel "had discussions of being married right in front of" Lengyel's mother. Lopez also stated that Lengyel represented that the two were married to "[t]he housekeepers," a mutual friend, "at least six" members of her family, to workers at "Pedernales Electric," the "City of Cedar Park," "Texas Gas or [Oncor]," "AT&T," and "Spectrum." Lopez further testified that there were several individuals—including members of Texas law enforcement, the couple's home builder, and the housekeepers—who referred to Lopez and Lengyel as being married, and neither party corrected that label. Evidence

9

that multiple people in the community assumed that Lopez and Lengyel were married is circumstantial evidence that they conducted themselves as a married couple would, especially when coupled with Lopez's mother's and the couple's housekeeper's testimonies that they believed the two were married based on their conduct. *See In re Estate of Giessel*, 734 S.W.2d 27, 29, 31 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (some evidence existed to support "holding out" element of informal marriage where members of local community referred to couple as married and neither husband nor wife "ever denied or corrected the label"); *see also Eris*, 39 S.W.3d at 715 (evidence was legally sufficient to support finding of informal marriage where appellee "testified he introduced [appellant] as his wife and she never contradicted him"). Additionally, notably, Lopez testified that she and Lengyel represented to the Canadian government that the two were married in August 2020. *See Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 353–54 (Tex. App.—Austin 2002, pet. denied) (evidence was legally and factually sufficient to support existence of informal marriage where, *inter alia*, putative wife referred to appellant "as her husband in a letter to the Consulate General of Switzerland"); *Leyendecker v. Uribe*, No. 04-17-00163-CV, 2018 WL 442724, at \*5 (Tex. App.—San Antonio Jan. 17, 2018, pet. denied) (mem. op.) (trial court may properly consider "representations made to governmental entities regarding marital status . . . as evidence either supporting or refuting a claim of informal marriage"). We conclude that the sum of this evidence creates a fact issue as to the third element of an informal marriage. *See, e.g.*, *Winfield*, 821 S.W.2d at 648–49 (evidence legally sufficient to support jury's finding of informal marriage where putative wife reserved a hotel room as "Mr. and Mrs. Winfield," putative wife "told her mother that she and Winfield were married," and couple's mailbox only had "Winfield" name on it, which "husband knew and did not object").

As support for his argument that there is no fact issue as to this element, Lengyel points to Lopez's testimony that she only told "a very small number of people" that they were married and otherwise kept the marriage a secret from their business associates and online fans. But this argument fails to take into account the relevant standard of review for summary judgment. "[W]e review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences." *King Ranch*, 118 S.W.3d at 751; *see also In re Estate of Giessel*, 734 S.W.2d at 31 ("We also reject appellant's contention that Kuchera was not married, as a matter of law, because she denied the marriage in tax returns, social security, driver's license, bank, and pay records. The argument fails to 'consider only that evidence most favorable to the issue and disregard entirely that which is opposed to it or contradictory to its nature.'"). "We apply these same principles to the summary judgment evidence of a single witness which contains conflicts or inconsistencies, some of which favor the movant and some the nonmovant." *Sosebee v. Hillcrest Baptist Med. Ctr.*, 8 S.W.3d 427, 435 (Tex. App.—Waco 1999, pet. denied). Lopez's statement that she attempted to keep the marriage a secret is inconsistent with her statement that she told "tens of thousands" of people that they were married.[1] It is up to the ultimate factfinder to resolve testimonial inconsistencies of this nature. *See id.*; *Villarreal v. State*, No. 03-18-00752-CV, 2020 WL 6576158, at *7 (Tex. App.—Austin Nov. 10, 2020, no pet.) (mem. op.); *cf. Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) (per curiam) ("[I]f conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented.").

---

[1] Lopez made both of these statements during her deposition.

11

In any event, our inquiry is not into whether the couple represented to non-Texans on the internet or to the couple's Californian business associates that they were married; rather, we must inquire as to whether the couple represented *in Texas* that they were married. *See Winfield*, 821 S.W.2d at 648 ("To satisfy this element, the parties must represent in Texas that they are married."); *see* Tex. Fam. Code § 2.401(a)(2); *Thomas*, 2024 WL 4394315, at *8 ("To satisfy this element of informal marriage, 'parties must, in Texas, have represented to others that they were married.'" (quoting *Eris*, 39 S.W.3d at 714)). Indeed, "[r]epresenting to others in another state that they are married does not satisfy this element of common-law marriage." *Winfield*, 821 S.W.2d at 648. There was at least some evidence that Lopez and Lengyel represented on several occasions, to both their family members and other individuals in their Texas community, that they were married. *See id.* Accordingly, evidence that Lopez and Lengyel failed to inform business associates and online fans outside of their local community that they were married merely raises a fact issue as to this element.

Lengyel also argues that most of the evidence concerning the existence of an informal marriage comes directly from Lopez, rather than from neutral third parties. However, "there is no bright-line quantitative test for what constitutes sufficient evidence of holding out to others." *Crenshaw v. Kennedy Wire Rope & Sling Co.*, 327 S.W.3d 216, 224 (Tex. App.—San Antonio 2010, pet. granted, judgm't vacated w.r.m.). And there is no rule that a specific number of disinterested witnesses must testify to the parties' reputation as a married couple for the evidence to be legally sufficient to support a finding of informal marriage. *See Riley v. Riley*, No. 14-11-00346-CV, 2012 WL 2550957, at *3 (Tex. App.—Houston [14th Dist.] July 3, 2012, no pet.) (mem. op.) ("Although it may be prudent for the proponent of an informal marriage to have multiple, unbiased witnesses testify about the protesting spouse's representations of

marriage, such evidence is not required for the proponent to avoid a no-evidence summary judgment."); *Martinez v. Lopez*, No. 01-09-00951-CV, 2011 WL 2112806, at *5 (Tex. App.—Houston [1st Dist.] May 26, 2011, no pet.) (mem. op.) ("Viewed in the light most favorable to the trial court's finding, Lopez's testimony provides legally sufficient evidence that she and Martinez represented to others that they were married and supports an inference that they had a reputation in the community for being married."); *cf. Meshell v. Lippi*, No. 02-15-00212-CV, 2016 WL 2840877, at *4 (Tex. App.—Fort Worth May 12. 2016, no pet.) (mem. op.) (in "he-said, she-said" case, factfinder is sole judge of whether elements of informal marriage are met).

Here, in addition to Lopez's testimony, her mother and the couple's housekeeper—both potentially biased witnesses—provided some evidence concerning the couple's status as married. Specifically, Lengyel's phone was added to Lopez's family plan and two of his cars were added to her car insurance. Lopez's mother, who was responsible for the family plan and car insurance, testified that she only agreed to confer these benefits on Lengyel because she believed he and her daughter were married. Although Lopez's mother testified that she never directly heard Lengyel refer to Lopez as his wife in English, Lopez's mother testified that Lengyel "always" referred to Lopez as his wife in Spanish while speaking with the housekeepers. And Lopez testified that Lengyel told her mother on "[a]t least three" occasions that the two were married.

The couple's housekeeper testified that she cleaned the parties' home twice a week for approximately three and a half years. She testified that Lopez and Lengyel "were living together as like a marriage." The housekeeper explained that although Lopez stated that Lengyel was her husband, she "didn't talk to [Lengyel] much" and never heard him refer to Lopez as his wife. Nevertheless, the housekeeper believed that they were married based on the

couple's conduct around one another. *See Thomas*, 2024 WL 4394315, at *8 ("Spoken words are not necessary to establish representation as husband and wife."). We conclude that the fact that most of the evidence in support of this element came from Lopez directly does not preclude the existence of a fact issue on this element. *See Crenshaw*, 327 S.W.3d at 228; *Riley*, 2012 WL 2550957, at *3.

Lastly, Lengyel points to evidence where Lopez referred to Lengyel as her boyfriend, even after the alleged August 2020 date of marriage. However, that Lopez may have on other occasions referred to Lengyel as her boyfriend merely creates a fact issue as to whether the two held themselves out as married. *See In re Estate of Giessel*, 734 S.W.2d at 31 ("Kuchera's representations in tax returns and other documents that she was single go to the weight of the evidence; they do not negate a marriage, as a matter of law."); *see also Bailey v. Thompson*, No. 14-11-00499-CV, 2012 WL 4883219, at *12 (Tex. App.—Houston [14th Dist.] Oct. 16, 2012, no pet.) (mem. op.) ("Although several documents reflect the parties' marital status as 'single,' the representations in these documents go to the weight of the evidence; they do not necessarily negate a marriage."). It does not establish, as a matter of law, that they were not married.

In short, we conclude that Lopez raised more than a scintilla of evidence concerning the third element of her informal marriage claim. Thus, we sustain Lopez's second issue.

## III.  CONCLUSION

We reverse the trial court's no-evidence summary judgment and remand for further proceedings consistent with this memorandum opinion.

14

_____

Maggie Ellis, Justice

Before Justices Theofanis, Crump, and Ellis

Reversed and Remanded

Filed:   April 10, 2026